UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                                                  NUMBER

**SOUTHERN HEALTHCARE SYSTEMS, INC.**          **02-11621**

DEBTOR                                                          CHAPTER 11

## MEMORANDUM OPINION

Health Care Capital Consolidated, Inc. ("HCCC"), a creditor of the debtor, Southern

Healthcare Systems, Inc., has moved to dismiss this bankruptcy proceeding or, in the alternative, enforce

certain Georgia state court orders .   After hearing argument of counsel, the Court requested further briefing

by the parties.  Considering the arguments, the memoranda,  the record in the case and the applicable law,

the Court will deny the Motion to Dismiss and order the appointment of a chapter 11 trustee.

### Factual and Procedural Background[1]

#### a.  The Acquisition and Refinancing

In early 1990, Health Care Capital, Inc. ("HCC"), now a wholly owned subsidiary of

HCCC, obtained the rights to acquire six nursing homes ("Facilities") pursuant to six separate purchase

agreements.  On or about March 29, 1990, HCC assigned all of its rights under the purchase agreements

to the debtor.  In exchange for the assignment, HCC received $1,000,000.00 cash and a subordinated

promissory note ("Subordinated Note") in the principal amount of $3,000,000.00.  The debtor and HCC

---

[1] The factual recitals are taken from the parties' briefs.

also entered into six separate management agreements under which HCC managed the Facilities for a period of five years beginning on Apri1, 1990.   Funds for the debtor's acquisition of the Facilities were obtained through the issuance of bonds, secured by liens on all assets of the Facilities. The Subordinated Note is secured by a second mortgage on the Facilities.

In 1996, the debtor refinanced the bonds through a new bond issuance and new loan agreements.   However, the terms of the original bonds barred their repayment until March 1, 2000.   For that reason, the proceeds of the 1996 bonds were held in trust for the original bondholders until the payoff date.   The indenture trustee for the original bonds released the original mortgages and security interests, and took security interests in the proceeds of the 1996 bonds being held in trust.

Norwest Bank was the indenture trustee for the 1996 bonds, which were secured by liens on the Facilities.   Bank One issued a letter of credit to Norwest that could be drawn on if the debtor defaulted on its loan agreements with the 1996 bondholders.   A separate intercreditor agreement between Norwest and Bank One allowed Bank One to assume the position of Norwest on the mortgages and security interests if Norwest ever drew on the letter of credit.   In connection with the 1996 bond financing, the debtor and HCC entered into a Second Amendment to Subordinated Promissory Note on July 1, 1996.

## b. Prior Litigation

In April 1999, the debtor gave notice to HCC of its intention to terminate the 1995 management contracts with HCCC, effective June 30, 1999.   In response, HCC sued the debtor in the United States District Court for the Middle District of Louisiana.   That suit sought monetary damages for wrongful termination and specific performance of its right, under the Subordinated Note, to approve any

successor manager of the Facilities. HCC also requested a temporary restraining order, a preliminary injunction and a permanent injunction to enforce specific performance under the Note. That action was dismissed without prejudice due to plaintiff's lack of standing.[2] In February 2000, HCCC sued the debtor in the Superior Court of DeKalb County, Georgia, alleging basically the same legal grounds and factual allegations as it did in the federal action. On September 1, 2000, the Georgia trial court granted HCCC's motion for summary judgment, holding that the Note required the debtor to obtain HCCC's approval of any manager or operator of the Facilities upon termination of HCCC's management contract. The September 1 order also enjoined the debtor itself from operating the Facilities or retaining another operator without HCCC's consent. Finally, it set out a detailed process for appointment of a new manager to be approved by all interested parties, including the debtor and Bank One, although Bank One had taken no action in the case, or in the Louisiana case. The Georgia Supreme Court affirmed the Georgia trial court order.

On November 2, 2001, the Georgia trial court entered an order permanently enjoining the debtor from operating the Facilities, and gave the interested parties 20 days to jointly approve an independent manager, recognizing that Bank One did not want to approve any change in management from the debtor. The court's order also provided that it would appoint a receiver if the parties could not agree on an independent operator. In a February 19, 2002 order, the Georgia trial court ruled that the debtor had until March 21, 2002 to enter into a contract with the agreed-upon independent operator, absent which the court would appoint a receiver. Both the November 2, 2001 order and the February 19, 2002 were

---

[2] HCC brought the suit, but the Note had been assigned to HCCC before the suit was filed.

3

affirmed by the Georgia Supreme Court.  Before the trial court appointed a receiver,  on June 11, 2002, the debtor filed this bankruptcy case.


## Legal Analysis

### a. Dismissal for Lack of Good Faith

HCCC urges that this case should be dismissed under 11 U.S.C. §1112(b) for lack of good faith.  Even though the enumerated list of potential causes for dismissal of a chapter 11 case found in §1112(b) does not include lack of good faith in the filing of the case,  the Fifth Circuit has held that good faith is an implicit requirement in a chapter 11 filing. *Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986).  The court noted in *Little Creek* that a good faith standard "furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and . . . prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them . . . ." *Id*. at 1072.  In its discussion, the Fifth Circuit noted that the facts of a particular case must rise to certain "level of egregiousness" in order to find that the chapter 11 process is being "perverted" in the case. *Little Creek*, 779 F.2d at 1073.

Courts have cited lack of good faith in dismissing cases where it was found that the case was filed purely as a litigation tactic (*In re First Financial Enterprises, Inc.*, 99 B.R. 751 (Bankr. W.D. Tex.1989)), to resolve what is really a two-party dispute (*In re SB Properties, Inc.*, 185 B.R. 206 (Bankr. E.D. Pa. 1981)), or as a forum-shopping device. *In re Monsour Medical Center, Inc.*, 154 B.R. 201 (Bankr. W.D. Pa. 1993)).  Although there are elements of these situations in this case, the relevant facts do not rise to the level of bad faith that was found in the cited cases and that would cause the dismissal of

4

the case.

An obvious major factor in the debtor's decision to file this case was the Georgia state court's threat to appoint a third-party manager or a receiver, actions the debtor maintains would increase its operating costs. No doubt the expenses of litigating with HCCC have affected the debtor's cash flow and payments to senior lenders and essential suppliers. Thus, although this case is not solely a dispute with HCCC, that litigation is significant. Over 500 other creditors have a stake in the survival of the debtor, including Bank One, whose $22.5 million debt must be addressed in the reorganization. Moreover, the debtor has owned the nursing homes and operated as a business since 1990. Thus, this case does not involve a recently organized single asset entity of the sort that was present in many of the reported decisions dismissing chapter 11 cases for bad faith. The debtor has ongoing operations, numerous employees and hundreds of residents in its homes whose interests all bear consideration and protection.

The mere fact that a bankruptcy proceeding is filed in response to a state court judgment is not alone reason to dismiss the case. *In re Sletteland*, 260 B.R. 657 (Bankr. S.D.N.Y. 2001). Nonetheless, the bankruptcy courts should be used only for truly reorganizing a debtor who is having financial difficulties. *In re Heritage Wood N' Lakes Estates*, 73 B.R. 511 (Bankr. M.D.Fla. 1987). The possible reorganization of this debtor's business to address its obligations to creditors other than HCCC and resolve its financial problems is a legitimate objective. Dismissal on the ground of bad faith should be granted sparingly. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989); *Sletteland*, 260 B.R. at 662, fn. 2; *In re Fox*, 232 B.R. 229 (Bankr. D. Kan. 1999). The largely undisputed events preceding the debtor's chapter 11 filing do not support dismissal of the case for bad faith under §1112(b).

### b. Dismissal under 11 U.S.C. §305(a)

The second basis for HCCC's motion is 11 U.S.C. §305(a), which allows a court to dismiss or suspend proceedings in a case if "the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ."  As discussed below, the creditors of this debtor, as well as its employees and nursing facility residents, would be better served by allowing the case to proceed under this Court's supervision, rather than dismissing or suspending the case.  The Court does not find the interests of any party except HCCC served by dismissing the case under §305(a), and therefore it will not do so.

### c. The *Rooker-Feldman* Doctrine

HCCC's third basis for seeking dismissal rests on what is known as the *Rooker-Feldman* doctrine.  This doctrine derives from two United States Supreme Court cases, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923).  The *Rooker-Feldman* doctrine "forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."  *Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000).  *See also Avoyelles Pub. Co. v. Ieyoub*, 133 F. Supp. 2d 460 (W.D. La. 2000).   HCCC argues that the *Rooker-Feldman* doctrine bars the debtor from proceeding here because the chapter 11 is merely a collateral attack on the Georgia state court ruling that the debtor cannot operate the nursing home facilities. As the Court explained in *Snider v. City of Excelsior Springs*, 154 F.3d 809, 811-12 (8th Cir. 1998), "[d]eciding whether *Rooker-Feldman* bars the . . . federal suit therefore requires that we determine what the state court held and whether the relief . . . requested in [the] federal action would void the state court's

6

decision or would require us to determine that the decision was wrong." The debtor's filing of a chapter 11 case will not require this Court to either void the Georgia state court judgment or collaterally address its propriety. Accordingly, *Rooker-Feldman* does not bar the debtor's chapter 11 filing.

The cases HCCC cites to support its position are valid applications of *Rooker-Feldman*, but are not directly applicable here. The debtor was not simply operating the Facilities: it owns them and so has a property interest to protect in this proceeding. "In apparent contradiction to the *Rooker-Feldman* theory, bankruptcy courts are empowered to avoid state court judgments, *see e.g.*, 11 U.S.C. §§544, 547, 548; to modify them, *see e.g.*, 11 U.S.C. §§1129, 1325; and to discharge them, *see e.g.*, 11 U.S.C. §§727, 1141, 1328. . . ." *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000). Therefore, final state court judgments are not *necessarily* preclusive in bankruptcy courts. Moreover, nothing suggests that the debtor's chapter 11 filing alone threatens to undermine the validity of the Georgia judgment. The debtor apparently sought the protection of the automatic stay from the effects of a judgment that could have deprived it of its property interest in the Facilities. The Georgia judgment has not been determined to be void or ineffective, nor has any party requested that relief at this stage. Meanwhile, HCCC has no property right to protect, only a contractual right to collect its prepetition debt and a right to enforce its judgment. Those rights will merely be delayed by the proceedings in this Court.[3]

_____

[3]     One other point related to the *Rooker-Feldman* issue bears noting. At the hearing on this motion, the Court requested additional briefing on the issue of whether 11 U.S.C. §543 required a receiver appointed by the Georgia state court to surrender the Facilities. Section 543(b)(1) requires that a custodian turn over to the trustee (or a debtor-in-possession) all property of the estate held by the custodian. Citing *In re Redman Oil Co.*, 95 B.R. 516 (Bankr. S.D.Ohio 1988), HCCC argues that the receiver was not required to turn over operation of the Facilities to the debtor in possession because the debtor had lost the right to operate pre-petition under the

### d.  <u>Other Relief Sought by HCCC</u>

Having concluded that this case need not be dismissed for any of the reasons HCCC asserts, the Court also must address HCCC's request to appoint a trustee or lift the automatic stay.  For all the reasons discussed in this opinion, the Court will not lift the stay so that a receiver can be appointed. However, the Court will order the United States Trustee to appoint a trustee.  Bankruptcy Code §1104(a)(2) authorizes the appointment of a trustee in a chapter 11 case "if such appointment is in the interests of creditors, any equity holders, and other interests of the estate . . . ."  The appointment of trustee in this case is the only practical way of protecting the debtor's reorganization goal and respecting the Georgia state court judgment barring the debtor from operating the Facilities.

The debtor cannot continue to operate the Facilities without violating the state court's injunction.  On the other hand, lifting the stay to allow HCCC to proceed to effectuate its judgment disregards the debtor's remaining property interest in the Facilities, and is not in the best interests of the other parties in the case.  The assets of the estate must be put to their best use, without excessive expense, in order to protect the interests of other creditors, the residents and patients of the Facilities and other interested parties.  A trustee can accomplish all these goals and also can evaluate the totality of the circumstances, financial and otherwise, to determine whether reorganization is feasible.  Accordingly, the

---

Georgia court ruling.  Thus, HCCC reasons that, because the estate had no interest in the operation as of the petition date, §543 is inapplicable.  However, *Redman* is distinguishable because there the debtor owned only operating rights as defined in an operating agreement, and not the oil and gas wells themselves.  In contrast, this debtor retains its ownership interest in the Facilities.  In any case, the §543 issue does not change the Court's conclusion that *Rooker-Feldman* is inapplicable here.

Court will grant HCCC's request and order the appointment of a trustee under §1104.

## Conclusion

In sum, the Court finds no grounds to dismiss the debtor's chapter 11 case and so will deny that portion of HCCC's Motion to Dismiss. The Court does conclude that it is appropriate to order a chapter 11 trustee appointed, and will grant the motion of HCCC to the extent that the Georgia judgment is effectuated by the trustee's appointment. The Court will enter a separate order in accordance with this memorandum opinion.

Baton Rouge, Louisiana, December 10, 2002.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE